Ji-In Lee Houck (SBN 280088)
*jiin@stalwartlaw.com*
Cindy Hickox (SBN 323016)
cindy@stalwartlaw.com
**STALWART LAW GROUP, APC**
MAILING ADDRESS:
8605 Santa Monica Blvd.
PMB 72538
West Hollywood, CA 90069
PHYSICAL ADDRESS:
1100 Glendon Ave, Suite 1840
Los Angeles, CA 90024
Telephone:    (310) 954-2000

Brett Lewis, Esq. (*pro hac vice forthcoming*)
Brett@iLawco.com
Lauren Valli, Esq. (*pro hac vice forthcoming*)
Lauren@iLawco.com
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

Attorneys for Plaintiffs Syed Hussaini and VPN.com, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYED HUSSAINI, and VPN.COM, LLC,<br><br>           Plaintiffs,<br><br>      vs.<br><br>TSUNAMI VR, INC.,<br><br>           Defendant. | Case No. **'21 CV0667 H    BLM**<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) BREACH OF PROMISSORY NOTE;**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiffs Syed Hussaini ("Hussaini" or "Plaintiff Hussaini") and VPN.com, LLC ("VPN" or "Plaintiff VPN," collectively with Hussaini, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendant Tsunami VR, Inc. ("Tsunami" or "Defendant"), allege as follows:

## NATURE OF ACTION

1. Plaintiffs Hussaini and VPN bring this complaint against Defendant for breach of a written contract to purchase the <University.com> domain name (the "Domain Name") and breach of a promissory note.

2. Plaintiffs seek monetary damages of $1,085,000, and $66,000, plus interest, attorneys' fees, and costs of collection.

## THE PARTIES

3. Plaintiff Hussaini is a citizen of the United Arab Emirates, with an address of #Apt. 702 Al Andulas Tower Near Mujarah park Sharjah, UAE.

4. Plaintiff VPN is a Georgia limited liability company with a principal place of business at 378 Aldridge Avenue, Scottdale, GA 30079. VPN's sole members, Michael Gargiulo and Joseph Gargiulo, are also citizens of Georgia. Michael Gargiulo is domiciled at 378 Aldridge Avenue, Scottdale, GA 30079. Joseph Gargiulo is domiciled at 378 Aldridge Avenue, Scottdale, GA 30079.

5. Upon information and belief, Defendant Tsunami is a Delaware corporation with an address of 2683 Via de la Valle, #G423, Del Mar, CA 92014.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties under the Domain Name Sale, Transfer & Escrow Agreement ("Sale Agreement"), and Promissory Note, both dated February 21, 2020. See Exhibits A, B, attached. Defendant also has its principal place of business in this District.

7.      Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332, giving this Court diversity jurisdiction in a civil action where the parties have diversity of citizenship, and the amount in controversy exceeds $75,000. While VPN's claim for damages in the amount of $66,000, plus interest and attorneys' fees exceeds $75,000, this Court also has supplemental jurisdiction over VPN's claim.  Defendant is a citizen or subject of California and Delaware, whereas Plaintiff Hussaini is a citizen of the United Arab Emirates, and VPN is a citizen of Georgia.

8.      This Court also has personal jurisdiction over Defendant as Tsunami has an office in this judicial district and does business in this judicial district.

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), as Defendant resides in this judicial district. Defendant also contracted to purchase the Domain Name in this district, the breach occurred in this district, and the obligation or liability to Plaintiffs arose in this district.

## FACTUAL BACKGROUND

10.     Plaintiff Hussaini entered into the Sale Agreement with Defendant on February 21, 2020.

11.     Plaintiff Hussaini entered into the Promissory Note with Defendant on February 21, 2020.

12.     Pursuant to the Sale Agreement, Defendant was obligated to make payments to Hussaini in the amount of $1.1 million, as the purchase price for the Domain Name.

13.     Pursuant to the Promissory Note, Defendant was obligated to make payments to Hussaini in the amount of $1.1 million.

14.     Pursuant to the Sale Agreement, Defendant was also obligated to pay broker's commissions to VPN in the amount of $66,000.

15.     Defendant made a single payment to Hussaini of $15,000. Defendant otherwise breached its obligation to pay the balance of the purchase price.

1    16.    Defendant breached its obligation to pay VPN commission.

2    17.    Defendant failed to pay any sums due or owing, despite multiple

3    assurances of payment, causing further delay and harm to Plaintiffs.

4    18.    As a result of Defendant's breaches, Plaintiffs have suffered monetary

5    damages in the amount of $1,085,000, in the case of Hussaini, and $66,000, in the

6    case of VPN.

7    19.    The Sale Agreement and Promissory Note also both provide for the

8    recovery of interest and attorneys' fees, in the event of a breach by Tsunami.

9                        **COUNT I:**

10                   **BREACH OF CONTRACT**

11                 **(Plaintiffs against Defendant)**

12    20.    Plaintiffs repeat and reallege paragraphs 1 through 19 of this

13    Complaint, which are incorporated herein.

14    21.    Hussaini entered into a legally valid and binding Sale Agreement with

15    Defendant to sell the Domain Name for $1.1 million.

16    22.    Pursuant to the Sale Agreement, VPN was to be paid broker's

17    commissions by Defendant in the amount of $66,000.

18    23.    Plaintiffs performed their obligations under the Sale Agreement,

19    namely by facilitating the sale and transfer of the Domain Name by VPN and

20    completing the sale and transfer of the Domain Name by Hussaini.

21    24.    Defendant breached the Sale Agreement, making only a single good

22    faith payment of $15,000.

23    25.    Defendant was obligated to make a payment in the amount of $85,000

24    on April 1, 2020 but failed to do so.

25    26.    Defendant was obligated to make payments of $100,000 on July 1,

26    October 1, 2020 and January 1, and April 1, 2021, but has failed to do so.

27    27.    Payments totaling $1.085 million are due to Hussaini.

28    28.    Payments totaling $66,000 are due to VPN.

---

COMPLAINT

29.     Plaintiffs provided written notice to Defendant of its breaches, but Defendant failed to cure within ten days.

30.     The Sale Agreement provides for the payment of interest by the purchaser in the event of non-payment.

31.     The Sale Agreement provides for the prevailing party to recover its reasonable attorneys' fees and costs in this action.

## COUNT II:
## BREACH OF PROMISSORY NOTE
### (Hussaini against Defendant)

32.     Plaintiffs repeat and reallege paragraphs 1 through 31 of this Complaint, which are incorporated herein.

33.     Defendant entered into a legally valid and binding written Promissory Note with Hussaini in the amount of $1.1 million.

34.     Defendant breached the Promissory Note, making only a single good faith payment of $15,000.

35.     Defendant was obligated to make a payment in the amount of $85,000 on April 1, 2020 but failed to do so.

36.     Defendant was obligated to make payments of $100,000 on July 1 and October 1, 2020, and January 1, and April 1, 2021 but has failed to do so.

37.     Payments totaling $1.085 million are due.

38.     Hussaini performed his obligations under the Sale Agreement, namely by completing the sale and transfer of the Domain Name.

39.     Plaintiffs provided written notice to Defendant of its breaches, but Defendant failed to cure.

40.     The Promissory Note provides for the payment of the entire unpaid balance in the event of default.

41.     The Promissory Note provides for the payment of interest by the purchaser in the event of default.

42.     The Promissory Note provides for the prevailing party to recover its reasonable attorneys' fees, court costs, costs of collection and other expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A.     Damages according to proof at trial, but in an amount not less than $1,085,000 for breach of contract and breach of the Promissory Note;

B.     Damages according to proof at trial in the amount of $66,000 in unpaid broker's fees;

C.     Interest, in the amount provided by the Sale Agreement and Promissory Note;

D.     Reasonable attorneys' fees, court costs, and costs of collection; and

E.     For such other and further relief as this Court deems just and proper.

Dated:  April 15, 2021                    STALWART LAW GROUP, APC


                                          By: /s/ Ji-In Lee Houck
                                          _____
                                          **JI-IN LEE HOUCK**
                                          **CINDY HICKOX**
                                          Attorneys for Plaintiffs


Dated:  April 15, 2021                    LEWIS & LIN, LLC


                                          By: /s/ Brett Lewis
                                          _____
                                          **BRETT LEWIS**
                                          **LAUREN VALLI**
                                          Attorneys for Plaintiffs

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiffs, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands trial by jury for all issues so triable.

Dated:  April 15, 2021                    STALWART LAW GROUP, APC

By: /s/ Ji-In Lee Houck

_____

**JI-IN LEE HOUCK**

**CINDY HICKOX**
Attorneys for Plaintiffs

Dated:  April 15, 2021                    LEWIS & LIN, LLC

By: /s/ Brett Lewis

_____

**BRETT LEWIS**

**LAUREN VALLI**
Attorneys for Plaintiffs

STALWART
LAW GROUP

COMPLAINT

Exhibit A

## DOMAIN NAME SALE, TRANSFER & ESCROW AGREEMENT

This Domain Name Sale, Transfer & Escrow Agreement ("Agreement") is entered into by and between Tsunami VR, Inc., a Delaware corporation with an address of 2683 Via de la Valle, #G423 Del Mar, CA 92014 and Syed Hussaini ("Seller"), with a place of #Apt 702 Al Andulas Tower Near Mujarah park Sharjah, UAE on this **21 day of February, 2020** for the transfer of ownership of the domain name: <University.com> (the "Domain Name"), including any and all rights associated therewith, to Purchaser listed in <u>Exhibit A</u> (collectively, the "**Assets**"). Seller and the Purchaser hereby agree as follows:

WITNESSETH:

WHEREAS, Purchaser wishes to buy the Domain Name and enter into a twenty-four (24) month payment period (terms and payment schedule identified below);

WHEREAS, upon Purchaser satisfying its payment obligations under this Agreement, Seller agrees to assign to Purchaser all of Seller's right, title and interest in the Domain Name and related trademarks or intellectual property associated with the Domain Name.

WHEREAS, the parties agree that the Domain Name and payments (the "Escrow Property") shall be delivered to the Escrow Agent to be held in escrow and released by the Escrow Agent in accordance with the terms and conditions of this Agreement; and

WHEREAS, the Escrow Agent is willing to serve as escrow agent pursuant to the terms and conditions of this Agreement.

NOW THEREFORE, the parties agree as follows:

ARTICLE I<br/>PAYMENT TERMS & DOMAIN STATUS

1.1

Assignment and Transfer. In consideration of full payment of the Purchase Price as defined below, Seller hereby irrevocably sells, assigns and transfers to the Purchaser all of Seller's rights, title and interest in and to the Domain Name. Purchaser agrees to pay Seller a total purchase price ("Purchase Price") ONE MILLION AND ONE HUNDRED THOUSAND DOLLARS ($1,100,000) payable pursuant to Section 1.2 below. Purchaser shall remit each payment via bank wire directly to Escrow Agent. **Upon Seller's receipt of payments from Escrow Agent, all payments are deemed non-refundable except in the event of any breach of this Agreement by Seller.**

1.2      **Payment of the Purchase Price; Commission**.  The Purchase Price shall be paid by Buyer as follows. On the Closing Date (as defined in Section 6.1, below), Buyer shall issue a Promissory Note in the form attached hereto as <u>Exhibit B</u> (the "**Promissory Note**") in the principal amount of $1,100,000.00 in consideration for the purchase of the Assets.  In addition to the Purchase Price, Buyer shall pay a one-time $15,000 Good Faith deposit on March 7, 2020 (to

be deducted from the first quarterly payment on April 1, 2020) and a one-time commission in the amount of $66,000.00 to Sharjil Saleem, of which $33,000.00 shall be paid on the Closing Date and the remaining $33,000.00 of which shall be paid on the one year anniversary of the Closing Date. Seller shall pay a total commission of $55,000 to Larry Fischer from proceeds of the sale.

1.3     Release of Payments and In Case of Default of Payment. Provided that Escrow Agent has received the Domain Name and all necessary related deliverables from Seller, Purchaser authorizes Escrow Agent to release the Initial Payment to Seller within two (2) business days of receipt of the Initial Payment: Purchaser further authorizes Escrow Agent to release each Installment Payment to Seller within two (2) business days after receipt of such payments.

•

        If Purchaser is in default of its payment obligations and such default has not been cured within thirty (30) business days of the date that Seller provides written notice to Purchaser of the default (the "Remedy Period"), Escrow Agent is authorized to release the Domain Name to Seller along with any Purchaser funds then being held by Escrow Agent, and if Buyer registered University.COM trademark, it is transferred to the Seller with no further obligations due upon the Buyer and a Full Release of the attached Promissory Note.

(a) Borrower shall make quarterly interest payments on or before the fifth (5th) calendar day at the beginning of every 3 months beginning with first payment on or
before April 1, 2020 in the aggregate amount of $100,000.00 through the Maturity Date (as defined below); provided that interest payments for any partial calendar quarter shall be prorated accordingly. Interest shall be 18% during the Default period and added to the payment.

(b) The Promissory Note shall mature on the earlier of (i) December 1, 2022, and (ii) the occurrence of an event of Default (as defined above) (the "Maturity Date"). Any principal and interest then unpaid shall be due on the Maturity Date. If this Note is not paid off under its term as of the Maturity Date, the unpaid principal balance shall accrue interest at a default rate of twelve percent (12%) per annum. Payments shall be made as outlined in the 'Payment Schedule' below.

**PAYMENT SCHEDULE:**

| | |
|---|---|
| Mar 7, 2020 | $15,000.00 |

| April 01, 2020 | $85,000.00 |
| July 01, 2020 | $100,000.00 |
| Oct 01, 2020 | $100,000.00 |
| Jan 01, 2021 | $100,000.00 |
| Apr 01, 2021 | $100,000.00 |
| July 01, 2021 | $100,000.00 |
| Oct 01, 2021 | $100,000.00 |
| Jan 01, 2022 | $100,000.00 |
| Apr 01, 2022 | $100,000.00 |
| July 01, 2022 | $100,000.00 |
| Oct, 01 2022 | $100,000.00 |

      1.4     <u>Seller's Representations and Warranties.</u> Seller represents and warrants that: i) Seller is an entity duly organized and validly existing under the laws of the country of its formation and has full and exclusive corporate power and authority to make, execute, deliver and perform this Agreement and to carry out all of its responsibilities and obligations contained herein, free of the claims of any third parties; ii) this Agreement is a legal and valid obligation binding upon Seller and enforceable in accordance with its terms; iii) the execution, delivery, and performance of this Agreement by Seller does not conflict with any agreement, instrument, license, contract or understanding, oral or written, to which it is a party and by which it may be bound; and iv) it is the lawful and exclusive registrant of the Domain Name and no other party has any right to registration of the Domain Name or has otherwise made any claim to the Domain Name at any time, including that the Domain Name violates another party's trademark rights, or violates any law or regulation, and (v) there are no pending or active lawsuits against Seller in connection with Seller's ownership of the Domain.

      1.5 <u>RELEASE:</u> UPON TRANSFER OF THE DOMAIN NAME TO PURCHASER, PURCHASER HEREBY RELEASES THE SELLER (INCLUDING ITS AGENTS, AFFILIATES, CLIENTS, OFFICERS, PRINCIPALS, OWNERS, AND RELATED COMPANIES TO THE EXTENT THAT SUCH APPLY) FROM ANY AND ALL CLAIMS, ASSOCIATED WITH SELLER'S REGISTRATION OF THE DOMAIN NAME EXCEPT AS IT RELATES TO ANY CLAIMS BASED ON A BREACH OF ANY OF THE SELLER'S REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTION 1.4.

      1.6     <u>Payments.</u> Purchaser shall submit all payments to Escrow Agent pursuant to the wire instructions below, who will act as Escrow Agent for the transaction, in exchange for a flat escrow fee of nine thousand seven hundred and ninety dollars ($9,790) Purchase Price and

included with the Initial Payment to be wired pursuant to the wire instructions below to  be split by Buyer and Seller .

**Wells Fargo California:**
**Bank Name:** Wells Fargo Bank, N.A. 420 Montgomery, San Francisco, CA 94104
**ABA Routing#:** ███0248
**Swift Code:** WFBIUS6S
**Credit Account Name:** Internet Escrow Services Inc
**Credit Account#:** ███7844
Reference: <u>University.com</u>

(International Wires only Swift BIC: WFBIUS6S)
Additional Instructions: Please include the transaction and escrow numbers on the wire transfer.
*Transaction number is available after the transaction is created at Escrow.com*

1.7

DISCLAIMER EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, THE PURCHASER DOES NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS, STATEMENTS, WARRANTIES, OR CONDITIONS OF ANY KIND OR NATURE WHATSOEVER CONCERNING THE DOMAIN NAME, AND ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED.

1.8

<u>Grant of License.</u> As long as Purchaser fulfills its obligations under this Agreement, Seller hereby grants to Purchaser an irrevocable, sub licensable, exclusive, worldwide, transferable, fully paid-up, royalty-free right and license to use the Domain Name and Marks during the Payment Period for Purchaser's lawful business purposes. The following terms apply solely with respect to the foregoing license during the Payment Period:

<u>Appropriate Use of Domain During the Payment Periods.</u> During the Payment Period, the Domain Name may only be used for websites that comply with all regulations, ordinances and laws regarding its possession or use. The Domain Name may not be used for any kind of adult content, gambling, the sale of firearms, illegal activities or other generally offensive uses which could reasonably expose the parties to civil or criminal liability, reputational harm, or business disruption ("Inappropriate Use"). In the event of Seller's reasonable determination that the Domain Name is being used for an Inappropriate Use during the Payment Period, Purchaser shall be in breach of this Agreement, and Seller may suspend Purchaser's use of the Domain Name upon written notice ("Notice of Improper Use"). Notwithstanding the foregoing, Seller shall provide Purchaser with a Notice of Improper Use and the Purchaser will have thirty (30) days after Purchaser receives the Notice of Improper Use to cure the breach before Seller can suspend Purchaser's use of the Domain Name. If Purchaser chooses, it may also cure such breach by electing to make all outstanding payments due under this Agreement and purchase the Domain Name.

1.9   Domain Name Ownership and Status. The Domain Name is considered personal property, regardless of its attachment to other websites or property. Seller retains title to the Domain Name at all times during the Purchaser Period unless and until Purchaser exercises its option to purchase the Domain Name by satisfying all then due payments as set forth in Section 1.2.

1.10 Claims Against or Relating to the Domain Name and Indemnity of Seller.

If during the term of this Agreement, Purchaser's use of the Domain Name becomes the subject of a complaint, UDRP or other litigation by a third-party, Purchaser shall immediately notify Seller of such claim or complaint and immediately provide Seller with a copy of such claim or complaint, at which time Purchaser must bear all costs of defense and make a prompt and timely response to such claim or complaint. Purchaser must also allow Seller's legal counsel to participate in and/or review any such response at its discretion. If a court or administrative body orders the Domain Name to be transferred to a third-party or otherwise encumber the Domain, Name and such claim is brought in connection with Purchaser's use of the Domain Name including but not limited to violation of FTC Rules (or international equivalents), violation of privacy laws, fraudulent activity, or violation of third-party intellectual property rights, Purchaser will be obligated to immediately pay the full amount due under this Agreement to compensate Seller for the loss of the Domain Name. In no case shall Seller be responsible for Purchaser's use of the Domain Name during the Lease Term.

Purchaser further agrees to indemnify, defend and hold Seller, including its stockholders, directors, officers, employees, agents and other representatives harmless from and against any claim, suit, damages, or other liabilities or proceedings (each a "Claim") brought or threatened against the Seller by a third party, to the fullest extent permitted by law, arising out of or in connection with: (a) Purchaser's breach of any term or condition of this Agreement; (b) a claim related to Purchaser's use of the Domain Name; or (c) a claim related to Purchaser's products or services offered on Purchaser's website that is associated with the Domain Name.

# ARTICLE II

# DELIVERIES TO THE ESCROW AGENT

2.1 <u>Deliveries.</u> Seller shall transfer control of the Domain Name, to be held as "Escrow Property," to the Escrow Agent upon the Effective Date of this Agreement and Purchaser shall deliver all required payments to be held as "Escrow Property" on behalf of the Parties.

2.2 <u>Intention to Create Escrow Over the Escrow Property.</u> The Parties intend that the Escrow Property shall be held in escrow by the Escrow Agent pursuant to this Agreement for their respective benefit as set forth herein.

2.3 <u>Escrow Agent to Deliver the Escrow Property.</u> The Escrow Agent shall hold and release the Escrow property only in accordance with the terms & conditions of this Agreement.

# ARTICLE III

## RELEASE OF THE ESCROW PROPERTY AND PAYMENTS

3.1<u>Release of Escrow.</u> Subject to the provisions of Section 3.1, the Escrow Agent shall release the Escrow Property as follows:

(a)    All payments received by Escrow Agent from Purchaser will be released to Seller within two (2) business days of Escrow Agent's receipt of such payments.

(b)    The Domain Name will be transferred to Purchaser upon Escrow Agent having received all payments from Purchaser then due under Section 1.2 of this Agreement. Upon confirmation that all payments and fees have been paid by Purchaser, Escrow Agent shall unlock the Domain within two (2) working days and provide the AUTH Code to Purchaser, via email, to allow Purchaser to initiate the transfer request process. Escrow Agent will manage the transfer process and respond to any registrar communications and take any necessary steps to allow Purchaser to assume control of the Domain Name.

(c)                                                                                                        T he Domain Name and the University.COM trademark, if registered by Buyer, will be transferred to Seller, if Purchaser is in material default of its payment obligations and such default under Section 1.3 (for non or late payment) has not been cured within ten (10) business days of the date that Seller provides written notice to Purchaser of the default; or if such default under Section 1.8 (for inappropriate use of the Domain Name) has not been cured within thirty (30) days of the date that Seller provides written notice to Purchaser of the default.

(d)                                                                                                        N otwithstanding the above, upon receipt by the Escrow Agent of a final and non-appealable judgment, order, decree or award of a court of competent jurisdiction (a "Court Order"), the Escrow Agent shall deliver the Escrow Property, or modify the WHO'S and/or DNS/Settings for the Escrow Property, in accordance with the Court Order. Any Court Order shall be accompanied by an opinion of counsel for the party presenting the Court Order to the Escrow Agent (which opinion shall be satisfactory to the Escrow Agent) to the effect that the court issuing the Court Order has competent jurisdiction and that the Court Order is final and non-appealable.

3.2       <u>Parties' Acknowledgement; Disputes.</u> The Parties acknowledge that the only terms and conditions upon which the Escrow Property is to be released or modified are set forth in Sections 2 and 3 of this Agreement. Any dispute with respect to the release of the Escrow Property shall be resolved pursuant to Section 4.2 or by mutual written agreement between the Parties.

# ARTICLE IV

## CONCERNING THE ESCROW AGENT

4.1.   <u>Duties and Responsibilities of the Escrow Agent.</u> The Escrow Agent's duties and responsibilities shall be subject to the following terms and conditions:

(a)   The Parties acknowledge and agree that the Escrow Agent (i) shall be obligated only for the performance of such duties as are specifically assumed by the Escrow Agent pursuant to this Agreement; (ii) may rely on and shall be protected in acting or refraining from acting upon any written notice, instruction, instrument, statement, request or document furnished to it hereunder and believed by the Escrow Agent in good faith to be genuine and to have been signed or presented by the proper person or party, without being required to determine the authenticity or correctness of any fact stated therein or the propriety or validity or the service thereof; (iii) may assume that any person believed by the Escrow Agent in good faith to be authorized to give notice or make any statement or execute any document in connection with the provisions hereof is so authorized; and (iv) shall be under a duty to treat the property held by Escrow Agent hereunder with a degree of care conforming to the professional standards of the industry for similarly situated escrow services, but in any event no less than a commercially reasonable degree of care.

(b)   Each Party agrees to indemnify and hold harmless the Escrow Agent and any of the Escrow Agent's partners, employees, agents and representatives for any action taken or omitted to be taken by Escrow Agent according to such Party's direct, express written instruction, including the fees of outside counsel and other costs and expenses of defending itself against any claim or liability under this Agreement, except in the case of gross negligence or willful misconduct, or acts or omissions other than in accordance with this Agreement on Escrow Agent's or its contractors' part committed in its capacity as Escrow Agent under this Agreement. The Escrow Agent shall owe a duty only to the Parties under this Agreement and to no other person.

(c)   The Escrow Agent may at any time resign as Escrow Agent hereunder by giving thirty (30) days prior written notice of resignation to the Parties. Prior to the effective date of the resignation as specified in such notice, the Parties will issue to the Escrow Agent a joint instruction authorizing delivery of the Escrow Property to a substitute Escrow Agent selected by the Parties. If no successor Escrow Agent is named by the Parties, the Escrow Agent may apply to a court of competent jurisdiction for appointment of a successor Escrow Agent, and to deposit the Escrow Property with the clerk of any such court.

(d)   The Escrow Agent does not have and will not have any interest in the Escrow Property, but is serving only as an escrow agent, having only possession thereof for the limited escrow purposes expressly set forth hereunder and for no other purpose.

(e)   This Agreement sets forth exclusively the duties of the Escrow Agent with respect to any and all matters pertinent thereto and no implied duties or obligations shall be read into this Agreement.

(f)   The provisions of this Section 4.1 shall survive the resignation of the Escrow Agent or the termination of this Agreement.

4.2   <u>Dispute Resolution: Judgments.</u> Resolution of disputes arising under this

Agreement shall be subject to the following terms and conditions:

(a)      If any dispute shall arise with respect to the delivery, ownership, right of possession or disposition of the Escrow Property, or if the Escrow Agent shall in good faith be uncertain as to its duties or rights hereunder, the Escrow Agent shall be authorized, without liability to anyone, to (i) refrain from taking any action other than to continue to hold the Escrow Property pending receipt of a joint instruction from the Parties, or (ii) deposit the Escrow Property with any court of competent jurisdiction in New Jersey, in which event the Escrow Agent shall give written notice thereof to the Parties shall thereupon be relieved and discharged from all further obligations pursuant to this Agreement.

(b) The Escrow Agent is hereby expressly authorized to comply with and obey any Court Order. In case the Escrow Agent obeys or complies with a Court Order, the Escrow Agent shall not be liable to the parties or to any other person, firm, corporation or entity by reason of such compliance, unless otherwise deemed liable by a Court Order.

## ARTICLE V

## ASSIGNMENT

5.1.

Assignment. Upon receipt of full payment for the domain Seller hereby irrevocably grants, conveys and assigns to Purchaser:

(a)     all right, title and interest in and to the Domain Name;

(b)     all right, title and interest in and to any registered or unregistered trademarks, service marks, or other intellectual property or proprietary rights based on or related to the Domain Name; and

(c)     all goodwill associated with the Domain Name.

## ARTICLE VI

## INDEMNIFICATION

6.1   Seller agrees to indemnify, defend and hold Purchaser, including its stockholders, directors, officers, employees, agents and other representatives harmless from and against any claim, suit, damages, or other liabilities or proceedings (each a "Claim") brought or threatened against the Purchaser by a third party, to the fullest extent permitted by law, arising out of or in connection with: (a) Seller's breach of any term or condition of this Agreement; (b) a claim related

to Seller's use of the Domain Name; or (c) a claim related to Seller's products or services offered on Seller's website, if any, that was associated with the Domain Name prior to purchase

## ARTICLE VII

## GENERAL MATTERS

    7.1.   <u>Termination.</u> This escrow shall terminate upon the release of all of the Escrow Property or at any time upon the mutual agreement in writing of the Parties.

    7.2.   <u>Notices and Addresses.</u> All notices, offers, acceptance and any other acts under this Agreement (except payment) shall be in writing, and shall be sufficiently given if delivered to the addresses in person, or by FedEx or similar overnight next business day delivery *and* by email as follows:

    **If to PURCHASER, to:**
Tsunami VR, Inc.
c/o Alex Hern
2683 Via de la Valle, Suite G#423
Del Mar, CA 92104

    **If to the SELLER, to:**
Syed Hussaini
8569 141A st
Surrey, BC – V3W 0S3, Canada

    **If to the Escrow Agent, to:**
Escrow.com 180 Montgomery St, Suite 650 San Francisco, CA
94104, USA

or to such other address as any of them, by notice to the other may designate from time to time. The parties have an affirmative duty to notify the escrow agent and other party of any change of address. Delivery by FedEx or similar overnight delivery to the addresses specified above.

7.3.

      <u>Assignment; Binding Agreement.</u> Neither this Agreement nor any right or obligation hereunder shall be assignable or transferable by any party without the prior written consent of the other parties hereto; provided that, either Party may assign this Agreement to the successor of its business in the event of a merger, acquisition, or sale of all or substantially all of the assets of such Party. Subject to the foregoing limitations, this Agreement shall inure to the benefit of and be binding upon the Parties and the Escrow Agent and their respective legal representatives, successors and assigns. Any assignment or transfer in violation of this Section 7.3 is null and void.

7.4.

      <u>Invalidity.</u> In the event that any one or more of the provisions contained herein, or the application thereof in any circumstance, is held invalid, illegal, or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained herein shall not be in any way impaired thereby, it being intended that all of the rights and privileges of the parties hereto shall be enforceable to the fullest extent permitted by law.

7.5.

      <u>Counterparts/Execution.</u> This Agreement may be executed in any number of counterparts by different signatories hereto on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument. This Agreement may be executed by facsimile transmission and delivered by facsimile transmission.

7.6.

      <u>Entire Agreement.</u> This Agreement shall constitute the entire agreement between the Parties hereto and the Escrow Agent, as applicable and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties.

7.7.

      <u>Extended Meanings.</u> In this Agreement words importing the singular number include the plural and vice versa; words importing the masculine gender include the feminine and neuter genders. The word "person" includes an individual, body corporate, partnership, trustee or trust or unincorporated association, executor, administrator or legal representative.

      7.8      <u>Waivers. and Amendments.</u> This Agreement may be amended, modified, superseded, cancelled, renewed or extended, and the terms and conditions hereof may be waived, only by a written instrument signed by all parties or, in the case of a waiver, by the party waiving compliance. Except as expressly stated herein, no delay on the part of any Party or the Escrow Agent in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part that Party or the Escrow Agent, as applicable, of any right, power or privilege hereunder preclude any other or future exercise of any other right, power or privilege hereunder.

      7.9.      <u>Headings.</u> The division of this Agreement into articles, sections, subsections and

paragraphs and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

7.10.   <u>Law Governing this Agreement.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles that would result in the application of the substantive laws of another jurisdiction. Any action brought by either Party or the Escrow Agent against a Party or the Escrow Agent, as applicable, concerning the transactions contemplated by this Agreement shall be brought only in a state or federal court of competent jurisdiction located in California. All Parties and the Escrow Agent executing this Agreement agree to submit to the jurisdiction of such courts and waive trial by jury. The prevailing party (which shall be the party which receives an award most closely resembling the remedy or action sought) shall be entitled to recover from the other party its reasonable attorney's fees and costs.

**[Signature
Page Follows]**

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement as of the day and year first written above.

**"Buyer"**                                                              **"Seller"**

TsunamiVR, Inc., a Delaware Corporation            Individual

By_____Name:

Guilhem Castagne
Title: Treasurer                                                  By_____

                                                                          Name: Syed Hussaini

**EXHIBIT A**

LIST OF ASSETS

1. Domain Name:  www.university.com

**EXHIBIT B**

FORM OF PROMISSORY NOTE

**EXHIBIT C**

BILL OF SALE

Upon receipt of all payments, Syed Hussaini, an individual, ("**Transferor**"), hereby sells, assigns and transfers to Tsunami VR, Inc., a Delaware corporation ("**Assignee**"), all right, title and interest in all of the assets listed on the <u>Exhibit A</u>, attached to the Asset Purchase and Sale Agreement, dated  February 21, 2020, which was entered into by and among Transferor and Assignee (the "**Agreement**").

Transferor warrants that Transferor is the lawful owner of the assets listed in the <u>Exhibit A</u> attached to the Agreement and guarantees and will defend the title to those assets against the claims and demands of any and all persons arising prior to this date

TRANSFEROR

By: _____

Name: Syed Hussaini

Exhibit B

# PROMISSORY NOTE

$1,100,000.00                                                                 February 21, 2020

### 1.      Principal and Interest.

FOR VALUE RECEIVED, Tsunami VR, Inc., a Delaware corporation ("**Borrower**"), hereby promises to pay to the order of Syed Hussaini ("**Lender**"), at Lender's address located at Al Andulas Tower, Mujarah Park, Sharjah, UAE, or at such other location as may be designated in writing by the holder of this Promissory Note ("**Note**"), the sum of the principal amount of One-Million One-Hundred Thousand Dollars $1,100,000.00, with interest thereon, pursuant to the terms of this Note. The unpaid principal balance of this Note shall bear interest at the rate of seven percent (7%) per annum calculated on the basis of a three hundred sixty five (365) day year for the actual number of days elapsed. In addition to the Purchase Price, Buyer shall pay a one-time $15,000 Good Faith deposit on March 7, 2020 (to be deducted from the first quarterly payment on April 1, 2020).

(a)      Borrower shall make quarterly interest payments on or before the fifth (5th) calendar day at the beginning of every 3 months (beginning with first payment on or before April 1, 2020) in the aggregate amount of $100,000.00 through the Maturity Date (as defined below); provided that interest payments for any partial calendar quarter shall be pro rated accordingly. Borrower has 30 days to cure non-payment before being in Default. Interest shall be 18% during the Default period and added to the payment.

(b)      This Note shall mature on the earlier of (i) December 1, 2022, and (ii) the occurrence of an event of Default (as defined below) (the "**Maturity Date**"). Any principal and interest then unpaid shall be due on the Maturity Date. If this Note is not paid off under its term as of the Maturity Date, the unpaid principal balance shall accrue interest at a default rate of twelve percent (12%) per annum.

(c)      This Note may be prepaid at any time, in whole but not in part, without penalty. All amounts paid toward the satisfaction of this Note shall be applied first to the payment of interest as required hereunder and then to the retirement of principal.

(d)     Whenever any payment on this Note shall be stated to be due on a day which is not a business day, such payment shall be made on the next succeeding business day.

(e)     Upon payment in full of all principal and interest payable hereunder, this Note shall be surrendered to Borrower for cancellation.

(f)     Payments shall be made as outlined in the 'Payment Schedule' below.

## PAYMENT SCHEDULE:

| | |
|---|---|
| Mar 7, 2020 | $15,000.00 |
| April 01, 2020 | $85,000.00 |
| July 01, 2020 | $100,000.00 |
| Oct 01, 2020 | $100,000.00 |
| Jan 01, 2021 | $100,000.00 |
| Apr 01, 2021 | $100,000.00 |
| July 01, 2021 | $100,000.00 |
| Oct 01, 2021 | $100,000.00 |
| Jan 01, 2022 | $100,000.00 |
| Apr 01, 2022 | $100,000.00 |
| July 01, 2022 | $100,000.00 |
| Oct, 01 2022 | $100,000.00 |

**2.     Attorneys' Fees and Costs of Collection.** If this Note or any installment of principal or interest is not paid when due, Borrower agrees to pay all costs and expenses of collection, including without limitation, reasonable attorneys' fees, court costs, and all costs and expenses in connection with the protection or realization of the Collateral and the payment and performance of each of the Obligations, whether or not suit is filed hereon or thereon. Such costs and expenses shall include, without limitation, (i) all costs, expenses and reasonable attorneys' fees incurred by Lender in connection with any insolvency, bankruptcy, receivership or other similar proceedings involving Borrower, and (ii) all costs, expenses and reasonable attorneys' fees incurred by Lender in connection with all negotiations, documentation and other actions relating to any work-out, compromise, settlement or resolution of Lender's claim.

    **3.**   **Notices.** Any notice, other communication or payment required or permitted hereunder shall be in writing and shall be deemed to have been given upon delivery if personally delivered or within three (3) business days of deposit if deposited in the United States mail for mailing by certified mail, postage prepaid.

    **4.**   **Default.** In the event of Default, the Lender takes back the university.com URL, and Lender keeps all monies paid to date.

    **5.**   **Waivers.** Borrower hereby irrevocably and unconditionally (a) waives presentment, demand for performance, notice of non-performance, protest, notice of protest and notice of dishonor and all other protests or notices to the full extent permitted by applicable laws or regulations; and (b) waives any right Borrower may have to require the Lender to exhaust any of the Collateral, or pursue a particular remedy to the exclusion of others. No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right.

    **6.**   **Choice of Law; Jurisdiction.** This Note is being delivered in and shall be construed in accordance with the laws of the State of California, without regard to the conflicts of law provisions thereof. Borrower and Lender acknowledge and agree that a court of competent jurisdiction for the state courts of San Diego County, California, will have exclusive jurisdiction and venue to adjudicate any and all disputes arising out of or in connection with this Note. Borrower and Lender consent to the exercise by such courts of personal jurisdiction over them and each of Borrower and Lender waives any objection it might otherwise have to venue, personal jurisdiction, inconvenience of forum, and any similar or related doctrine.

    **7.**   **Maximum Interest**. All agreements between Borrower and Lender, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid, to Lender for the use, forbearance or detention of money exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever any such amount exceeds the limit of validity prescribed by law, then, ipso facto, the amount required to be paid shall be reduced to the limit of such validity, and if from any such circumstance Lender shall ever receive as interest (under this Note or otherwise) an amount that would exceed the highest lawful rate, such amount as would otherwise be excessive interest shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest, or, to the extent it exceeds the unpaid balance of principal, shall be refunded to Borrower.

    **8.**   **Amendment and Waiver.** The provisions of this Note may be modified or amended only in a writing executed by Borrower and Lender. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

      **9.**    <u>**Rights and Remedies**</u>**.** The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies that Lender may otherwise have.

      **10.**    <u>**Severability**</u>**.** If one or more provisions of this Note are held to be unenforceable under applicable law, such provision(s) shall be excluded from this Note, and the balance of this Note shall be interpreted as if such provision(s) were so excluded and shall be enforceable in accordance with its terms.

*[Signature Page Follows]*

      **IN WITNESS WHEREOF**, Borrower has caused this Promissory Note to be issued as of the date first set forth above.

**LENDER:**                                                  **BORROWER:**

Syed Hussaini

Tsunami VR, Inc.

By:

By:

Name :Syed Hussaini
Domain Owner

Name: Guilhem Castagne
Its: Treasurer

**Address:**  Al Andulas Tower
la
Mujarah Park
Sharjah, UAE

**Address:** 2683 Via de

Valle, Suite G#423
Del Mar, CA 92104